[No. 28706.   Department Two.   June 25, 1942.]

KATHERINE H. WELSH *et al., Respondents and Cross-appellants,* v. LLOYD GARRETSON COMPANY, *Appellant.*[1]

[1]Reported in 126 P (2d) 1073.

84

*Ronald R. Hull* and *Cherry & Hull,* for appellant.

*D. V. Morthland* and *Lane Morthland,* for respondents and cross-appellants.

BEALS, J.—Prior to July, 1939, G. Winthrop Coffin and Helen M. Coffin, his wife, were the owners of a fruit ranch in Yakima county. July 19, 1939, Mr. Coffin executed in favor of his sister, Katherine H. Welsh, his promissory note for $2,300, securing the same by a chattel mortgage covering his 1939 fruit crop. The same date, Mr. Coffin executed his promis-

sory note in favor of Lloyd Garretson Company, a corporation, in the sum of $1,939, securing this note by a second chattel mortgage upon the 1939 fruit crop. Mrs. Welsh's agent and attorney prepared both notes and mortgages, each mortgagee being fully advised of the existence of both notes and mortgages. The following provision is found in each mortgage:

"The privilege is hereby granted to the mortgagor to use sufficient proceeds from the sale of said crops to satisfy and discharge all costs of harvesting, packing and storing any and all fruit crops."

Mr. and Mrs. Coffin both died intestate March 15, 1940, H. A. Sontheimer having been appointed administrator of their estates. A claim was filed against the estates upon each of the promissory notes above referred to. It appears that the entire 1939 crop was harvested and sold, Mr. Coffin having attended to the sales. The final sale of fruit from the 1939 crop netted $1,101.53, which amount is now in the registry of the superior court for Yakima county awaiting distribution in this action.

Plaintiff Katherine H. Welsh and H. A. Sontheimer, as administrator of the estates of Mr. and Mrs. Coffin, filed in this action their joint complaint alleging the facts hereinabove set forth, and in addition thereto that one thousand dollars had been paid upon Mrs. Welsh's note, leaving thirteen hundred dollars and accrued interest due thereon, and asking that the court determine the ownership of the fund deposited in court, that the fund be awarded to plaintiff Katherine H. Welsh, and that she be allowed her costs.

Defendant, Lloyd Garretson Company, answered, denying that there was thirteen hundred dollars due plaintiff Welsh, admitting other allegations, and by way of cross-complaint alleging the execution of the note and mortgage by Mr. Coffin to Lloyd Garretson

Company; that this mortgage was subject to the mortgage to Mrs. Welsh; that there was due upon the Lloyd Garretson Company note the sum of $1,039.85, together with accrued interest; that all the proceeds of the 1939 crop raised by Mr. Coffin, with the exception of the fund deposited in court, had been paid to plaintiff Welsh; that she should have retained therefrom sufficient to pay her note in full; and that the fund in court should be awarded to the answering defendant.

Plaintiffs having replied to the cross-complaint and affirmative defenses with denials, the action was tried to the court, which entered a decree containing many findings of fact, the net result being that Mrs. Welsh was not charged with certain sums received by her agent on account of the fruit crop, but was charged with other sums, being the proceeds of the crop, the court adjudging that against the balance due Mrs. Welsh upon her note should be charged $521.74, being the proceeds of the fruit crop released by Mrs. Welsh to Mr. Coffin without defendant's consent, leaving, of the balance due Mrs. Welsh on account of the principal of her note, the sum of $994.18, for which she was entitled to a first lien upon the fund which had been deposited in court, and which is the subject matter of this action, and that the balance of that fund, in the sum of $158.72, was subject to the lien of defendant's second mortgage. The court refused to tax costs in favor of either party.

From this decree, defendant, Lloyd Garretson Company, appealed, and plaintiff Katherine H. Welsh has prosecuted a cross-appeal from so much of the decree as charged against her the amount above referred to and awarded to appellant any portion of the fund in court.

In this opinion we shall refer to Lloyd Garretson

Company as appellant, and Katherine H. Welsh as respondent.

Appellant assigns error upon the refusal of the trial court to find that respondent, as senior mortgagee, had lost her right to claim a lien upon the fund in court; upon the action of the trial court in determining the cost of harvesting the 1939 fruit crop; in refusing to deduct from such expenses an item of $377.40, which was paid to respondent on account of apple boxes for which Mr. Coffin was entitled to a credit, and which sum was delivered by respondent to Mr. Coffin. Appellant also contends that the trial court erred in refusing to charge against the amount due respondent the sum of three hundred dollars paid for a portion of the fruit crop by Fox & Momany.

On her cross-appeal, respondent assigns error upon the trial court's ruling charging to respondent, as between her and appellant, a payment made by Fox & Momany direct to Mr. Coffin, in the sum of $688.53.

Appellant relies upon the general rule that a senior mortgagee owes to subsequent mortgagees, of whose rights he has notice, good faith in the enforcement of his mortgage. 41 C. J. 579; 14 C. J. S. 820. Pursuant to this recognized principle of law, respondent had no right to so act as to carelessly or wantonly decrease the value of appellant's lien under its second mortgage.

Appellant argues that, because respondent released a large proportion of the proceeds of the mortgaged crop to Coffin, without requiring an accounting either as to the proceeds of the crop or the disbursements made by Coffin in harvesting, packing, and storing the same, it should be held that respondent has lost her right to assert her prior lien as against the proceeds of the crop now in the registry of the court, or should be held estopped to assert any prior lien thereon.

Of course, under her mortgage, respondent, as between herself and the mortgagor, did not have the right to appropriate to payment of her mortgage the proceeds of the sale of the mortgaged crop, until the expenses of harvesting, packing, and storing the crop were paid out of the proceeds thereof. Appellant was advised of this matter, as its mortgage contained a clause to that effect. On the other hand, appellant might complain if respondent released to Coffin money received by respondent from the proceeds of the fruit crop in excess of the reasonable expenses of preparing the crop for market, as provided in the mortgages. It would seem that appellant's rights were not prejudiced by respondent's failure to demand a strict accounting from the mortgagor, if the money released to Coffin from the proceeds of the crop did not exceed the proper and reasonable expenses of harvesting and marketing.

The total proceeds from the sale of Mr. Coffin's fruit crop for 1939 (exclusive of the $1,101.53 now in court and the subject of this litigation) amounted to $3,265.78. It must be remembered that both the chattel mortgages above referred to were regularly filed for record, and were notice to all persons purchasing from Mr. Coffin any portion of his 1939 crop that respondent and appellant had liens thereon. It must also be remembered that each of these chattel mortgages provided that the cost of harvesting, packing, and storing the fruit crop should be preferred charges against the proceeds of the fruit crop, as far as the two mortgages were concerned.

It appears from the evidence that of the proceeds of the crop, $2,577.25 was paid to respondent and by her turned over to Mr. Coffin, and that the sum of $688.53 was paid direct to Mr. Coffin by Fox & Momany, neither party to this action having any information concerning that sale until after Mr. Coffin's death.

It does not appear that respondent ever required

Mr. Coffin to furnish any account of his expenditures in harvesting the crop, and after Mr. Coffin's death, his records concerning these expenses, as found by his administrator, were rather fragmentary.

The trial court, being of the opinion that, from the facts as shown, Mr. Coffin's reasonable expenses in harvesting the crop were entitled to priority over both mortgages, and that the reasonable amount of such expenses should not be charged against respondent's mortgage, as between her and appellant, heard evidence concerning these expenses, and fixed the amount thereof at $1,744.04.

Appellant contends that the trial court erred in refusing to charge against respondent's mortgage, as far as appellant's claim was concerned, all of the proceeds of the crop received by respondent, which respondent turned over to Mr. Coffin, further contending that at least five items, a little less than $250, were improperly allowed as harvesting expense.

The trial court properly ruled that the reasonable expense of harvesting and marketing the crop was entitled to priority over both mortgages, and we find no error in the allowance of any of the items to which appellant objects. The court did not err in fixing the reasonable expenses in connection with the harvesting and selling of the crop in the amount above set forth.

It appears that Mr. Coffin agreed to sell Fox & Momany a portion of the crop, and apples of the value of $688.53 were purchased by Fox & Momany. This firm paid Mr. Coffin, apparently by way of an advance, the sum of three hundred dollars, and, when they came to make final payment for the apples, they failed to deduct this amount, paying Mr. Coffin $688.53, which was the full price of the fruit purchased. The advance and the final payment were made by the purchaser direct to Mr. Coffin, neither respondent nor appellant

having any information concerning the same. The trial court charged against respondent's mortgage the amount of $688.53, covering the amount paid by Fox & Momany for fruit purchased, but refused to charge against respondent's mortgage the overpayment of three hundred dollars. Appellant contends that this overpayment should also have been charged against respondent's mortgage. The overpayment was a matter between Mr. Coffin and Fox & Momany, it did not represent an actual purchase, respondent knew nothing about it, and the trial court properly refused to charge the overpayment against respondent.

It also appears that there was paid to Mr. Coffin, on account of the sale of apple boxes, $377.40, and appellant contends that this amount should also be charged, as between the parties hereto, against respondent's mortgage. It does not appear that the fruit boxes were subject to either mortgage, and we cannot agree with appellant's contention on this point.

It appeared that a purchaser of a portion of the crop paid therefor by a check for $578.34, dated October 23, 1939, which check respondent's agent turned over to Mr. Coffin, who a few days later paid respondent five hundred dollars, which was credited upon her mortgage. Appellant argues that, as between the parties to this action, this sum should not have been considered as retained by respondent from the proceeds of the crop, since respondent received the check from Mr. Coffin, as appellant argues, after respondent had released the $578.34 to Mr. Coffin, and had waived any right to retain the same or any portion thereof and apply it upon her mortgage. We find no error in the ruling of the trial court upon this phase of the case.

Appellant vigorously argues that respondent, by her conduct, is estopped to assert the lien of her mortgage as against appellant, arguing that, by her

failure to demand a strict accounting from Mr. Coffin concerning the amount of his 1939 fruit crop and the disposition thereof, appellant's rights were so prejudiced that equity should accord appellant, as against respondent, a greater measure of relief than was granted by the trial court. In this connection, it should be noted that the recorded chattel mortgages were notice to the world of the rights of the respective mortgagees, and that the latter were entitled to rely upon the notice given by the filing of the mortgages. As to the matter of accounting, it would seem that some responsibility rested upon appellant, and that the entire burden cannot be thrown upon respondent.

We find no reason for holding that equitable or any other principles of law require the granting to appellant of any greater measure of relief than that allowed by the trial court.

We shall now discuss the question presented by respondent's cross-appeal. As above stated, Mr. Coffin sold to Fox & Momany apples for which he received from them the sum of $688.53. It would seem that the purchaser entirely disregarded the two chattel mortgages owned by the respective parties to this proceeding, and dealt with Mr. Coffin as though no such liens existed. The trial court filed two memoranda, the second modifying the first by reducing the amount which the court directed be charged against respondent. In the first memorandum opinion, the court called attention to the fact that neither appellant nor respondent had any knowledge of any payment made by Fox & Momany to Mr. Coffin, or of the sale of fruit to that firm, "until long after the rights of the parties to this controversy had become fixed." In its first memorandum, the court directed that the three hundred dollars overpayment made by Fox & Momany to Mr. Coffin should be charged against respondent. This

was one of the items which the court in its second memorandum opinion directed be not so charged. Nothing in the second memorandum opinion, however, indicates that the court changed its view of the facts as to respondent's knowledge of the sale to Fox & Momany, and the evidence shows beyond question that respondent had no knowledge of this sale.

Appellant argues that the court properly charged respondent with a sum equal to the amount paid Coffin by Fox & Momany, because, while Mr. Coffin under the mortgages which he executed was entitled to sufficient money out of the crop to pay for the cost of harvesting, etc., he was entitled to no more of such proceeds until the two chattel mortgages were fully satisfied; and that, as between respondent and appellant, in their respective claims against the fund in court, respondent should be charged with such sums as respondent wrongfully or carelessly permitted Mr. Coffin to divert from payments upon one or other of the two mortgages. This principle was recognized by the trial court, and we hold that the trial court correctly charged against respondent's claim to the fund in question certain amounts which we are convinced respondent wrongfully released to Mr. Coffin.

As to the Fox & Momany payment, however, respondent did not release this money to Mr. Coffin, because neither respondent nor her agent knew anything about it. It cannot be held that respondent was careless in assuming that no one would buy mortgaged property without seeing to it that the lien of the mortgage was released. Admitting that respondent trusted and relied upon her brother, Mr. Coffin, we are nevertheless of the opinion that respondent's liability to appellant should not be extended beyond holding that respondent should be held to have waived her lien in appellant's favor as to the other items which the trial

court charged against her. We find no basis in the record which justifies the ruling of the trial court including the payment which Fox & Momany made to Mr. Coffin among the items which the trial court held should be deducted from respondent's claim to the fund in the registry of the court.

The decree appealed from is affirmed on appellant's appeal, and reversed on respondent's cross-appeal, with instructions to the trial court to proceed in accordance with the views herein expressed. Respondent will recover her costs in this court.

ROBINSON, C. J., BLAKE, STEINERT, and JEFFERS, JJ., concur.

